

**FILED**

**Margaret Botkins**
**Clerk of Court**

4:38 pm, 2/22/24

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

ANITA C. DESELMS, et al.,

    Plaintiffs,

vs.

OCCIDENTAL PETROLEUM
CORPORATION, ANADARKO
PETROLEUM CORPORATION,
ANADARKO E&P ONSHORE LLC,
ANADARKO OIL & GAS 5, and
ANADARKO LAND CORP.,

    Defendants.

Case No.  19-CV-00243

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF JEFFREY HARRISON AND CERTAIN EXPERT OPINIONS OF ABRAHAM WICKELGREN**

This matter is before the Court on the Motion to Exclude Expert Opinions of Jeffrey Harrison and Certain Expert Opinions of Abraham Wickelgren, filed by Defendants (hereinafter "Anadarko"). ECF 336. Anadarko separately filed its Memorandum in Support. ECF 337. Plaintiffs have also filed their Response. ECF 347. The Court, having considered the filings and being otherwise fully advised in the premises, FINDS the motion should be **GRANTED IN PART** and **DENIED IN PART**.

1

BACKGROUND

This motion is brought in tandem with Anadarko's Motion for Summary Judgment (ECF 333), and contemporaneously with Plaintiffs' Motion for Partial Summary Judgment on Defendants' State Action Defense. ECF 330.

The Court adopts the brief summary of the relevant background from the Tenth Circuit's Order affirming this Court's class certification (ECF 220):

> Plaintiffs allege Anadarko's intracompany practice of leasing its mineral interests to its affiliated operating company, including its 30% royalty rate, had the intent and effect of reducing the value of Plaintiffs' mineral interests. Plaintiffs claim Anadarko thereby maintained and furthered its dominant position in the market for leasing oil and gas mineral interests in violation of the Sherman Act § 2 and Wyoming antitrust laws. Plaintiffs seek treble damages and attorneys' fees under § 4 of the Clayton Act.
>
> The district court certified a class action, for liability purposes only, comprised of "[a]ll persons . . . having ownership of Class Minerals during the Class Period." App. Vol. II at 275. Class Minerals were further defined as oil and gas mineral interests that were not under lease to drill and operate wells during the Class Period and that were situated within specified geographic regions of Laramie County and adjacent to sections of minerals covered by Anadarko's 30% royalty intracompany leases. The Class Period ran from November 1, 2017, through October 19, 2020.

*Black v. Occidental Petroleum Corporation*, 69 F.4th 1161, 1168-9 (10th Cir. 2023) (hereinafter "*Black*"). The Court also provided an extensive overview of this case in its order on class certification, which is incorporated herein. ECF 220.

The instant motion focuses on the expert opinions of Professors Abraham Wickelgren and Jeffrey Harrison. Anadarko seeks to exclude Harrison's opinions on standing and refusal-to-deal claims, as well as Wickelgren's opinion on antitrust injury, as improper legal opinions. ECF 337, at 11–15. Anadarko also relies on the *Daubert* standard

to exclude Harrison's non-legal opinions as well as Wickelgren's opinion that Anadarko possessed monopsony power. *Id.* at 15–32 (referencing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). Plaintiffs' Response argues that Wickelgren's antitrust injury and monopsony power opinions are admissible. ECF 347. As for Harrison, Plaintiffs state that he may be called by Class members as an economic expert witness in a future damages trial, and thus Anadarko's motion is premature. *Id.* at 6.

### APPLICABLE LAW

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). Under Federal Rule of Evidence 702, an expert witness may provide opinion testimony if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge with help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

A plaintiff bears the burden in demonstrating their proffered expert evidence is admissible as relevant and reliable, *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009), while the court acts as a gatekeeper to ensure expert testimony "is relevant to the task at hand" as well as having "a reliable basis in the knowledge and experience of [the expert's] discipline." *Daubert*, 509 U.S. at 592, 597.

As mentioned above, expert testimony is not relevant unless it would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert

testimony "which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

As to reliability, admissible expert testimony must be "based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1991). The U.S. Supreme Court has suggested four factors, derived from *Daubert*, for this analysis:

> (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citing *Daubert*, 509 U.S. at 593–94). However, this *Daubert* standard is not "some magical incantation," and the court need not apply all reliability factors. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) (internal quotation marks and citation omitted). The court has discretion to apply the factors in a flexible manner to ensure "that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Bitler*, 400 F.3d at 1233 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

> The plaintiff need not provide that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Id.* (quoting *Mitchell*, 165 F.3d at 781). Once admissibility is established, objections to an expert's opinion and methodology raise evidentiary weight questions, which are

appropriately addressed through cross-examination, presentation of contrary evidence, and jury instructions. *Daubert*, 509 U.S. at 596.

## DISCUSSION

### I.   *Is Wickelgren's Antitrust Injury Opinion an Improper Legal Opinion?*

Wickelgren's opinion regarding antitrust injury is proper and admissible, despite embracing a legal conclusion. An expert's testimony is admissible, despite embracing a legal conclusion, if it provides the underlying criteria and analyses that allow the trier of fact to exercise its independent judgment. *United States v. Dazey*, 403 F.3d 1147, 1171–72 (10th Cir. 2005) ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.")

"'The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern.'" *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). In *Specht v. Jensen*, the Tenth Circuit looked toward the caselaw to define the boundaries of impermissible expert testimony:

> These cases demonstrate that an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.

853 F.2d 805, 809–10 (10th Cir. 1988). Therefore, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "Witnesses are permitted to

5

testify about how the law applies to a certain set of facts, so long as they provide adequate explanations for their conclusions." *Richter*, 796 F.3d at 1196 (citing *Dazey*, 403 F.3d at 1171); *see also United States v. Buchanan*, 787 F.2d 477, 483–84 (10th Cir. 1986) (affirming admission of expert testimony that a homemade device was a firearm and therefore needed to be registered with the Bureau of Alcohol, Tobacco, and Firearms); *United States v. Logan*, 641 F.2d 860, 863 (10th Cir. 1981) (holding that an expert may testify about how certain funds were classified by law). Thus, expert testimony that *embraces* an ultimate legal conclusion but also "provides the jury with the *tools* to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field" is permissible. *Richter*, 796 F.3d at 1195 (citing *Dazey*, 403 F.3d at 1171–72).

In determining the side upon which an expert's testimony lies, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Dazey*, 403 F.3d at 1171. Thus, the discussion of legal standards which "aid[s] the jury in making a decision" is distinct from "substitut[ing] [the expert's] judgment from the jury's." *Id.* at 1342 (quoting *Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011)).

Anadarko seeks to strike Wickelgren's opinion that the Class members suffered "antitrust injury," (ECF 310, ¶ 17) on the grounds that "[t]his type of opinion usurps the Court's rule and, regardless, does not in fact 'help' the jury." ECF 337, at 14 (quoting *Baumann*, 836 F. Supp. 2d at 1202 (rejecting an "attempt[] to offer [expert's] opinion as to

6

the legal standards which he contends control the case")). As Anadarko alleges, Wickelgren formulates his antitrust injury opinion by relying on an "analysis of seventeen different judicial opinions" regarding both antitrust injury and reverse payment settlement cases in the patent context, by analogy, "as well as a couple of legal treatises" and "nothing else." *Id.* at 13. In Anadarko's understanding, according to Wickelgren's alleged "(mis)interpretation of the caselaw," the latter contends that Plaintiffs "can nevertheless show antitrust injury." *Id.* at 13–14 (citing ECF 310, ¶ 153).

Anadarko argues this is an impermissible legal opinion for two reasons. First, that it is "for the Court to ultimately determine the appropriate standard of antitrust injury." *Id.* at 14. Second, that it is "for the jury to determine whether Plaintiffs suffered antitrust injury. . ." *Id.* (citing ECF 339 at 116:7–117:2; ECF 334 at 54–57). If admitted, Anadarko fears that Wickelgren assists Plaintiffs in "mask[ing] [the] realit[ies]" of the case "by having a variety of law professors [including Wickelgren] opine on the law applicable to their case or on the validity of their claims under said law." *Id.* at 14.

Plaintiffs argue Anadarko ignores that Wickelgren's economic analyses is "rooted in facts and data and reliable economic principles and methods that implicate antitrust injury," including "the economic implications of *how* the standard is applied here." ECF 347, at 9 (emphasis added). Thus, Plaintiffs argue Wickelgren's testimony is admissible as it "aid[s] the jury in making a decision" rather than an attempt to substitute their expert's judgment for that of the jury's. *Id.* (quoting *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Financial, N.A.*, 959 F.3d 1324, 1342 (10th Cir. 2017)).

The Court agrees with Plaintiffs. While Wickelgren's antitrust injury opinion embraces a legal conclusion (that Class members suffered antitrust injury), it is admissible because it derives from extensive legal and economic analyses within Wickelgren's field of antitrust expertise and he provides "the tools to evaluate [that] ultimate conclusion." *Richter*, 796 F.3d at 1195. Wickelgren's testimony draws on well-accepted economic principles including: (1) rational profit-maximization; (2) the economies of complements; (3) economies of scale; (4) fixed versus marginal costs; (5) the economics of monopsony; (6) inferences of anticompetitive effect when actions would otherwise be inexplicable; and (7) the deterrent effects of differing evidentiary standards for antitrust injury. ECF 347, at 12 (citing ECF 310, ¶¶ 49, 51, 55, 56, 60, 92, 93, 123, 136, 140–42, 147, 149–51). In applying these principles, Wickelgren relies on Anadarko's admissions, the testimony of other experts, or both.

Further, while Wickelgren provides his legal analysis of caselaw and treatises, his economic analyses go beyond the purpose of "direct[ing] the jury's understanding of the legal standards upon which their verdict must be based." *Specht*, 853 F.2d at 809–10. Although Wickelgren uses the term "antitrust injury" and even argues that the Class members suffered such injury, Wickelgren does not "directly testify that [Anadarko] actually violated" federal and state antitrust law. *Dazey*, 403 F.3d at 1172. Like the expert in *Dazey*, Wickelgren explains his economic analyses and relevant caselaw or treatises to conclude that Class members suffered an antitrust injury. This is distinct from concluding that Plaintiffs (as a whole) have an actionable claim under either Sherman Act § 2 or Wyoming law.

Finally, Anadarko's concerns that this antitrust injury opinion would utterly hijack the jury's decision-making are unwarranted. The general rule is that juries are not bound to believe opinions of witnesses, even if they are qualified as experts. *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001); *Diestel v. Hines*, 506 F.3d 1249, 1268 (10th Cir. 2007). Moreover, it is within the province of the jury to determine the specific weight given to individual pieces of evidence. *United States v. Frost*, 318 F. App'x 664, 668 (10th Cir. 2009). Alternatively, undue weight concerns can be rectified through cross-examination, presentation of contrary evidence, and jury instructions. *Daubert*, 509 U.S. at 596.

Anadarko's request to exclude Wickelgren's antitrust injury opinion as improper legal opinion is **DENIED**.

## II.     Is Wickelgren's Monopsony Power Opinion Admissible?

Wickelgren's monopsony power opinion is admissible under Rule 702, as his "market definition" theory is reliable. An expert witness may provide opinion testimony if it is both relevant and reliable. Fed. R. Evid. 702; *see also United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (holding that the court must assess "proffered expert testimony to ensure it is both [1] relevant and [2] reliable"). In its "gatekeeping function," a court analyzes the reliability of expert testimony with reference to the *Daubert* standard. *Bitler*, 400 F.3d at 1233 (citing *Daubert*, 509 U.S. at 593–94, and articulating the four factors). There is flexibility in applying these factors and no rigid requirement to meet all factors in a clear, concise manner. *Id.*; *Goebel*, 215 F.3d at 1088.

9

Wickelgren's monopsony power opinion relies upon his "market definition" theory and use of the capacity method to measure market share. Anadarko attacks this opinion, arguing it is inconsistent with both law and economics, and it relies upon a "one-of-its-kind methodology" for proving monopsony power, which is itself unreliable. ECF 337, at 15–25, 25–30.

In response, Plaintiffs argue against Anadarko's assumption that Wickelgren's analysis and opinions turn on the concept of Single Section Markets ("SSM") as "already debunked by the Tenth Circuit in this case." ECF 347 at 16 (citing *Black*, 69 F.4th at 1176–79). With that clarification, Plaintiffs broadly articulate four separate arguments responding to Anadarko's motion, which parallel Rule 702's requirements. *Id.* at 16–18, 19–21, 21–28, 28–30; *see also* Fed. R. Evid. 702.

As to this portion of Anadarko's motion, the Court agrees with Plaintiffs. Wickelgren's monopsony power opinion is based on sufficient facts and data. As summarized by Plaintiffs, these facts are: (1) that oil and gas mineral leases are individually negotiated; (2) the economics of drilling in the North Denver-Julesburg Basin ("NDJ") require using two-section, north-south oriented DSUs in order to be profitable; and (3) the mineral leases within such a DSU are complementary inputs and substitutes. ECF 347, at 26. Each of these facts are either drawn from the record or themselves apparent through Wickelgren's analysis. *See* ECF 310, ¶¶ 86–89, 92; *Black*, 69 F.4th at 1170; ECF 311, ¶¶ 23–26, 31–41, 47–49, 54–57, 112–13.

As to whether Wickelgren's monopsony power opinion is the product of reliable principles and methods, the Court finds the capacity method of measuring market share to

be reliable. While Anadarko argues that such "one-of-its-kind methodology" for proving monopsony power is unreliable, its use is sanctioned and warranted by the facts.

Anadarko correctly notes that the "usual[]" approach to proving monopsony power is to do so "indirectly or circumstantially—by defining a relevant product and geographic market [and] pointing to the defendant's share of that market," *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1071 (10th Cir. 2013), and the "usual measure of a market and of the shares within it" is "output," which may be measured by "physical units" or "revenue." ECF 337, at 25 (citing Areeda & Hovenkamp, *Antitrust Law*, ¶ 535 (5th ed. 2021).

However, there is no uniform approach to market definition. "Market definition" is often considered a "highly technical economic question," *Morgan, Stand, Wheeler & Biggs v. Radiology Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991), which "must be based on expert testimony," *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002). In attempting to define a relevant market, the Court recognizes the following overarching principle:

> [T]he relevant market is defined as "the area of effective competition." *Ibid.* Typically this is the "arena within which significant substitution in consumption or production occurs." . . . But courts should "combin[e]" different products or services into "a single market" when "that combination reflects *commercial realities*." . . .; *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37, 82 S. Ct. 1502, 8 L.Ed.2d 510 (1962) (pointing out that "the definition of the relevant market" must "'correspond to the commercial realities' of the industry.").

*Ohio v. American Express Co.*, 128 S. Ct. 2274, 2285 (2018) (emphasis added). Beyond the principle that defined markets must conform to a case's "commercial realities," there is also the notion that "[i]n § 2 cases. . . there may be *submarkets* that are separate economic entities." *United States v. Grinnell*, 384 U.S. 563, 572 (1966) (emphasis added).

Wickelgren provides justification in using the capacity method, namely: (1) the relevant market is characterized by individual lease negotiations; (2) Anadarko was the only operator with vertical integration in the NDJ; (3) the only way to profitably drill a horizontal well in the NDJ is via a vertical, two-section DSU; and (4) on average, operators needed an estimated Net Revenue Interest ("NRI") of 80% to profitably lease oil and gas minerals in a two-section DSU in the NDJ. ECF 347, at 22–28.

These atypical facts reflect the "commercial realities" that exist in the NDJ which, when coupled with the inherent flexibility in the 2010 Guidelines in measuring market share, provide an explanation for Wickelgren's departure from the traditional approach as argued by Anadarko. *See* Dep't of Justice & Fed. Trade Comm'n, Antitrust Div., *Horizontal Merger Guidelines* (Aug. 19, 2010) (hereinafter "2010 Guidelines"). Anadarko certainly may challenge Wickelgren's arguments or evidence at trial as to the capacity measure. *Daubert*, 509 U.S. at 596. But their motion fails to demonstrate reliability flaws in Wickelgren's reasoning. Further, "[t]he plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Bitler*, 400 F.3d at 1233.

Plaintiffs have shown that Wickelgren's employed method in reaching his conclusion is "scientifically sound." *Id.* The 2010 Guidelines sanction use of the capacity method to measure market share. Plaintiffs also highlight the 2010 Guidelines' widespread recognition and use elsewhere by both private parties and federal enforcement agencies.

ECF 347, at 23 (collecting cases); *see, e.g., Novell*, 731 F.3d at 1071. Because Wickelgren's capacity method directly flows from the 2010 Guidelines and from the atypical facts of this case which relate to the commercial realities Wickelgren identifies, Anadarko fails in its burden to show that Wickelgren's opinion is either not the product of reliable principles and methods or fails to reliably apply the principles and methods to the facts of the case.  Therefore, the Court concludes that Wickelgren's monopsony power opinion is admissible under Federal Rule of Evidence 702, and Anadarko's second argument, as it relates to Wickelgren's monopsony power opinion, is **DENIED**.

### III.     *Admissibility of Harrison's Opinions.*

The Court turns to Anadarko's request to exclude Harrison's opinions. These are three opinions which Harrison intends to offer at trial: (1) that Plaintiffs have "antitrust standing to sue"; (2) that the concepts of elasticity could be applied to this case; and (3) that Plaintiffs have properly stated a claim under the Supreme Court holding in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). ECF 337, at 10. Anadarko alleges that the first and third opinions, which they refer to as "standing" and "refusal-to-deal" opinions, respectively, are inadmissible legal opinions. *Id.* at 12–13. As for Harrison's second opinion, Anadarko bifurcates it as expert non-legal opinions theorizing about (a) the textbook principles of monopsony theory and (b) the application of the concepts of demand and supply elasticity to the allegations in the Second Complaint. *Id.* at 30. According to Anadarko, both non-legal opinions should be excluded for failure to meet the *Daubert* standard. *Id.* at 30–32.

Plaintiffs simply retort that because Harrison may be called by Class members as an economic expert witness in a future, as-yet-unscheduled damages trial, Anadarko's motion as to Harrison is premature and irrelevant. ECF 347, at 6.

The Court rejects Plaintiffs' argument that Anadarko's motion is premature or irrelevant. For the reasons argued by Anadarko, Harrison's current opinions are stricken. With this said, however, should this case proceed beyond the liability stage and if the Court permits redesignation of experts, Harrison shall be available for redesignation with the understanding that his opinions shall be limited to the application of the economic elasticity principles relating to the facts admitted during trial. Anadarko has leave to challenge any such redesignation.

Therefore, the Court **GRANTS** that portion of Anadarko's motion to exclude Harrison's opinions.

## Conclusion

For the above reasons, IT IS HEREBY ORDERED that Anadarko's Motion to Exclude Expert Opinions of Jeffrey Harrison and Certain Expert Opinions of Abraham Wickelgren (ECF 336) is **GRANTED IN PART** and **DENIED IN PART**. Anadarko's Motion is **GRANTED** as to Jeffrey Harrison and his expert opinions are excluded. Anadarko's Motion is **DENIED** as to the expert opinions of Abraham Wickelgren.

Dated this 22nd day of February, 2024.

_/s/ Nancy D. Freudenthal_
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE