

**FILED**

3:11 pm, 3/11/24

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DENNIS A. BLACK, et al., | |
| Plaintiffs, | |
| vs. | Case No.  19-CV-0243-F |
| OCCIDENTAL PETROLEUM CORPORATION, et al., | |
| Defendants. | |

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on two motions for summary judgment. Plaintiffs seek partial summary judgment on Defendants' State action (*Parker*) defense (ECF 330), and Defendants (hereinafter "Anadarko") seek summary judgment as to all Plaintiffs' claims (ECF 333).  A hearing was held on March 5, 2024, and the motions have been fully briefed.  For the following reasons, the Court DENIES both motions.

### BACKGROUND

The Court adopts the brief summary of the relevant background from the Tenth Circuit's Order affirming this District Court's Order certifying a class action for liability purposes only (ECF 220):

> Plaintiffs allege Anadarko's intracompany practice of leasing its mineral interests to its affiliated operating company, including its 30% royalty rate, had the intent and effect of reducing the value of Plaintiffs' mineral interests. Plaintiffs claim Anadarko thereby maintained and furthered its dominant

position in the market for leasing oil and gas mineral interests in violation of the Sherman Act § 2 and Wyoming antitrust laws. Plaintiffs seek treble damages and attorneys' fees under § 4 of the Clayton Act.

The district court certified a class action, for liability purposes only, comprised of "[a]ll persons . . . having ownership of Class Minerals during the Class Period." App. Vol. II at 275. Class Minerals were further defined as oil and gas mineral interests that were not under lease to drill and operate wells during the Class Period and that were situated within specified geographic regions of Laramie County and adjacent to sections of minerals covered by Anadarko's 30% royalty intracompany leases. The Class Period ran from November 1, 2017, through October 19, 2020.

*Black v. Occidental Petroleum Corporation*, 69 F.4th 1161, 1168–69 (10th Cir. 2023) (hereinafter "*Black*"). This Court also provided an extensive overview of the case in its order on class certification, which is incorporated herein. ECF 220. Additional or new factual contentions relevant to the issues presented in the pending motions are discussed below.

<u>**APPLICABLE LAW**</u>

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). "Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2554). The nonmoving party may not rest solely on the allegations in the pleadings but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553; *see* Fed. R. Civ. P. 56(e).

A genuine issue of fact does not exist, and summary judgment is appropriate, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249, 106 S. Ct. at 2511. In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S. Ct. at 2512. The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Additionally, the court, when ruling on a motion for summary judgment, must construe the facts in the light most favorable to the nonmoving party. *Id.*

Federal courts applying state law ascertain and apply the proper state law with the goal of insuring that the result obtained is the one that would have been obtained in state court. *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 621 (10th Cir. 1995) (citing *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993)).

3

<u>DISCUSSION</u>

**I.**     ***The Parker/State Action Defense***

    A.     <u>Plaintiffs' Motion</u>

Plaintiffs seek partial summary judgment on the *Parker*/state action defense pled by Anadarko. ECF 330; *see Parker v. Brown*, 317 U.S. 341, 351 (1943).  Plaintiffs assert they do not challenge the Court's prior rulings that Anadarko's conduct in *acquiring* APDs alone is protected from federal antitrust liability by the *Parker* doctrine.   However, Plaintiffs contend that Anadarko's *use* of the APDs[1] to suppress or attempt to suppress competitive leasing – by deciding not to drill and not drilling its own Drilling and Spacing Units (DSUs) – is not protected by *Parker*.  Plaintiffs also argue the *Parker* doctrine does not apply to their state law claims.

In more detail, Plaintiffs argue that state law does not completely replace competition with Wyoming Oil and Gas Conservation Commission ("WOGCC") regulation of the oil and gas industry, and there is no active, deliberate state review and control over the details of Anadarko's *use* of the APDs to suppress or attempt to suppress competitive leasing by blanketing the relevant North DJ Basin[2] with APDs and then refusing to drill its DSUs.  Finally, Plaintiffs argue that the *Parker* doctrine defense is grounded in the principles of federalism, namely "the principle of freedom of action for the States, adopted to foster and preserve the federal system." *F.T.C. v. Ticor Title Ins. Co.*,

---

[1] "APDs" refers to applications for permits to drill approved by the WOGCC.
[2] The North Denver-Julesburg Basin is in southeastern Laramie County.

504 U.S. 621, 633 (1992).  As such, according to Plaintiffs, it has no application as a defense against Plaintiffs' state law claims.

Anadarko resists Plaintiffs' motion, arguing that it is an attempt to resurrect a narrow issue the Court previously decided, namely whether *Parker* immunity shields the State of Wyoming's grant of exclusive drilling rights to Anadarko.  The Court previously ruled that, if the State is immune for *granting* exclusive rights, Anadarko is also immune for *possessing* those rights.  *See* ECF 31.  According to Anadarko, Plaintiffs cannot successfully segregate and argue against the authorized *use* of the exclusive rights possessed by Anadarko even if that use has anticompetitive effects.

As to Plaintiffs' motion for partial summary judgment relating to the federal antitrust claims, the Court agrees with Anadarko.  By state action, Anadarko applied for and obtained exclusive drilling rights in the areas covered by the state permits.  Therefore, as this Court previously held, Anadarko cannot be held liable for applying for or possessing the rights granted by the State. ECF 31, at 10; ECF 220, at 18.

Furthermore, possession of a state approved permit to drill includes the right to exclude third parties from drilling in the location authorized by the permit, the right to drill as authorized, and the right to defer drilling. These are all authorized uses under the state permit and the record indicates that the WOGCC was aware that Anadarko used the permits to exclude others while not drilling itself.  ECF 339-1.  Plaintiffs are correct that the WOGCC does not regulate drilling decisions by permittees, nor does it regulate the number and pattern of APDs that can be held by a company.  However, that is not the point.  The

state-supervised regulatory scheme within which Anadarko acquired the state permits authorized the rights/uses discussed above.

Further, this is not a case comparable to *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216 (2013), which addressed a state law creating special-purpose public entities and which gave those entities general corporate powers. Rather, this case challenges the anticompetitive conduct of holding a number of APDs which "blanketed an area," with no intention to drill and with the resulting right to exclude others from drilling. This conduct is not the result of a law granting general powers to oil and gas companies. *Contra Phoebe Putney*, 568 U.S. at 228–29. Rather, the conduct was clearly undertaken by Anadarko pursuant to a specific and detailed regulatory scheme that was of the State's own design, until the State undertook to change it.

For these reasons, Anadarko is not liable for *possessing and using* all authorized rights granted by the State pursuant to a comprehensive regulatory scheme adopted by the WOGCC, and for which that particular State actor would be immunized. This remains true even if the state action both restrains competition by excluding others from drilling at Anadarko's authorized location and allows Anadarko to choose not to drill. Any other outcome would render the *Parker*/state action defense meaningless because artful pleadings could regularly circumvent it.

Finally, Plaintiffs seek partial summary judgment precluding the state action defense as to their state antitrust claims. As Plaintiffs acknowledge, there is no binding precedent from the Tenth Circuit supporting their argument, referencing that this circuit specifically declined to address the issue. *See Telecor Commc'ns, Inc. v. Southwestern*

*Bell Tel. Co.*, 305 F.3d 1124, 1139 (10th Cir. 2002).  The Court is also not aware of any binding precedent from the Wyoming Supreme Court on this issue.  In support of their motion, Plaintiffs reference a 1997 federal district court decision from Kansas concluding that "[w]here … federal antitrust laws are not implicated, the purpose behind state action immunity disappears." *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co*., 956 F. Supp. 910, 919 (D. Kan. 1997).  Anadarko opposes Plaintiffs' motion and points to other cases in support of their argument that the weight of authority from other jurisdictions supports applying the defense to state law claims.

This issue occupies less than two full pages within the parties' written briefs, and references three relatively unpersuasive cases.  After all, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation marks and citations omitted). The Court concludes the scant briefing by Plaintiffs fails to show they are entitled to judgment in their favor on this issue as a matter of law.  However, the Court cautions the parties that it has not ruled on this issue, noting that Anadarko has the affirmative burden on their defense at trial, and that Anadarko's similarly scant briefing provides no basis for any conclusion on the issue. Therefore, for the reasons stated above, Plaintiffs' motion for partial summary judgment is DENIED.

B.    Anadarko's Motion

Anadarko also invokes the *Parker*/state action doctrine in support of summary judgment, arguing that this doctrine immunizes Anadarko's 30% royalties. ECF 334, at 46.

Anadarko argues that the high royalty rate was a foreseeable and well-known result of Wyoming's punitive force-pooling statute, and that Wyoming actively supervises force-pooling orders, including by policing onerous lease royalties that conflict with state policy. Plaintiffs oppose the motion, arguing that Anadarko cannot satisfy the applicable test for private parties claiming state action immunity.  ECF 352, at 44.  Plaintiffs argue that the restraint (the high intracompany royalty rate) is not articulated and affirmatively expressed as state policy, but rather it thwarts forced pooling, and that the imposition of such a rate is not actively supervised.

The applicable test in cases involving private parties claiming state action immunity is well-established:

> The Supreme Court's *Midcal* decision sets forth the governing test for when state action immunity will be extended to non-state actors – (1) "the challenged restraint must be one clearly articulated and affirmatively expressed as state policy," and (2) "the policy must be actively supervised by the State itself."

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1249 (10th Cir. 2016) (citing *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980)).

As to this portion of Anadarko's motion for summary judgment on its *Parker*/state action defense, the Court rejects Anadarko's argument that the 30% intracompany royalty is immunized or otherwise protected.  The Court previously concluded that there was no active state supervision of intracompany royalty decisions, assuming for the sake of argument that any Court could find a clearly articulated, affirmative expression of state policy relating to the imposition of an above-market intracompany royalty along the lines

Plaintiffs have challenged in this case. Anadarko's factual assertions and arguments relating to forced pooling miss the point because the <u>challenged restraint</u> isn't forced pooling, it is the intracompany royalty decision made by the non-state actor. *See id.* Consequently, there is no immunity or state actor defense that can be supported based on *Parker* and its prodigy, and this portion of Anadarko's motion for summary judgment is DENIED.

## II.   *The Relevant Market(s) and Whether Anadarko exercised Monopsony Power in a Fashion that is Actionable under Section 2 of the Sherman Act*

In general, Anadarko argues that two of the three markets Plaintiffs assert are not relevant antitrust markets, and Anadarko did not, as a matter of law, have monopsony power in the third. Therefore, according to Anadarko, Plaintiffs cannot make this showing for any of the three markets they have alleged, but rather the case involves a localized dispute about property rights and it is not an antitrust case.

More specifically, Anadarko argues Plaintiffs assert, and have improperly gerrymandered, three markets without choosing among them. They also argue that neither single-section markets, grouped markets, nor eastern Laramie County are relevant markets. Finally, Anadarko argues it did not have market power in any of Plaintiffs three markets. In opposition, Plaintiffs argue relevant markets exist and Anadarko wielded monopsony power within them. First, Plaintiffs argue that Anadarko's relevant market argument fails because defining such markets involve fact-intensive, complex economic questions that are unsuitable for summary judgment. Plaintiffs also argue that this Court and the Tenth Circuit rejected Anadarko's arguments about single-section markets. Plaintiffs also

discuss the North DJ geographic market and the two submarkets within the North DJ basin, and argue they used economically accepted, available tools for defining a relevant product market in this case.

"The first step in analyzing an antitrust claim is to determine the relevant market in which the defendant is operating." *Telecor*, 305 F.3d at 1130. The relevant market consists of both a geographic market and a product market. *Id.* Both markets are at issue in this case. Often defendants wish to define the market as broadly as possible, making it difficult for a jury to find that it exercised monopoly or monopsony power, while plaintiffs wish to define the market narrowly, for the opposite reason. *See, e.g., id.*

The Tenth Circuit recognizes that there is no subject matter in antitrust law more confusing than market definition. *Telecor*, 305 F.3d at 1130. "[T]he concept [of market definition] . . . is deliberately an attempt to oversimplify–for working purposes–the very complex economic interactions between a number of differently situated buyers and sellers, each of whom in reality has different costs, needs, and substitutes...." *Id.* at 1131 (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 966 (10th Cir. 1994)).

However, at its simplest, the relevant market is that market which is relevant to the legal issue before the court. *Id.* at 1130. Therefore, while focusing on the legal issue presented, "to define a market in product and geographic terms is to say that if prices were appreciably raised or volume appreciably curtailed for the product within a given area, while demand held constant, supply from other sources could not be expected to enter promptly enough and in large enough amounts to restore the old price and volume." *Id.* By defining the relevant market, the objective is to identify firms that compete with each other

and the alleged anticompetitive conduct restraining trade in the market. *Id.* (citing *SCFC ILC*, 36 F.3d at 966). The definition of the relevant market is a question of fact for the factfinder, and Plaintiffs have the burden of proof on the issue at trial. *Id.*

At the outset, the Court would note that Plaintiffs' allegations have the potential to implicate different oil and gas lessees (buyers) and different mineral owner lessors (sellers) and, consequently, different potentially relevant markets. However, the identity of the relevant market to be studied varies based on the level of commerce where the plaintiffs argue the defendant had monopolized/monopsonized competition. *See Telecor*, 305 F.3d at 1132.

In this case, Plaintiffs argue Anadarko monopsonized competition in the mineral leasing market in the area of eastern Laramie County where oil and/or gas is reasonably producible from the Niobrara and Codell geologic formations, by imposing a restraint on input markets (*i.e.*, Anadarko's 30% intracompany leases in the north/south-oriented two-section Drilling and Spacing Units).   For class certification purposes and focusing on the legal issue before the court, this Court previously identified these two formations in eastern Laramie County as the terrain in which competition for mineral leases takes place (*i.e.*, the geographic market). ECF 31, at 19; *see Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1312 (10th Cir. 2017).

The product (or input market) alleged by Plaintiffs to be restrained is mineral land available for leasing within this geographic market which, as alleged by Plaintiffs, "could 'reasonably be aggregated into an analyzed in just two groups,' namely, sections with Anadarko 30% intracompany leases to both the north *and* south and those with such an

11

intracompany lease only to the north *or* south." *Black*, 69 F.4th at 1177 (emphasis in original; internal citation omitted).

Even at this point in time, the Court continues to understand that the product market relevant to the legal issue advocated by Plaintiffs' specific theory of anticompetitive harm is the above-described mineral land available for leasing within the above-described geographic market. As noted above, Plaintiffs propose a two-group aggregation approach for analysis, and argue that this aggregation approach is reasonable, in reliance on Dr. Wickelgren and their argument that he used economically accepted, available tools for defining a relevant product market. Anadarko argues against this approach and has its own expert to opine on relevant market. The Court clearly understands that the parties do not agree on the definition of relevant market. However, for the reasons explained below, the Court finds no legal flaw or unsupported basis undermining Plaintiffs' identified market.

First, there is no question that restraints on input markets fall under antitrust purview "because monopsonistic practices will eventually adversely affect [end]-consumers." *Telecor*, 305 F.3d at 1136. The Tenth Circuit discusses this point well for the unique facts presented herein:

> Economists too have long recognized that market inefficiencies created by anticompetitive restraints on input markets can be as destructive of a free market economy (and therefore ultimately damaging to consumers) as restraints on output markets. While antitrust prosecutions for restraints on input markets are relatively rare, this is explained by the fact that restraints on input markets arise only in the unusual circumstance of an effective monopsony—a single purchaser, or a group of purchasers acting in concert. And monopsony in turn arises only when the resource is uniquely valuable in its current use, so that even if the price is depressed by monopsony, sellers are unable to find alternative buyers. Thus, for example, in the *Mandeville Island Farms* case, the sugar refiners' monopsonistic price-fixing scheme

was effective because growers could not easily find other buyers or profitably switch to other crops when refiners conspired to fix the price of sugar beets. *See Mandeville Island Farms v. American Crystal Sugar Co.,* 334 U.S. 219, 240–42 (1948). Nonetheless, according to the economists, there is a dead-weight loss associated with imposition of monopsony pricing restraints. Some producers will either produce less or cease production altogether, resulting in less-than-optimal output of the product or service, and over the long run higher consumer prices, reduced product quality, or substitution of less efficient alternative products.

*Telecor*, 305 F.3d at 1135–36 (internal quotations omitted).

Next, as to Anadarko's argument relating to single-section markets, both this Court and the Tenth Circuit have rejected the proposition that Dr. Wickelgren identified one-mile sections as the relevant antitrust market. *Black*, 69 F.4th at 1177–78. Anadarko has advanced no law or undisputed facts changing this outcome, and the Court will not rehash arguments concerning Dr. Wickelgren's "grouping" approach[3] which considered competitive conditions to create two distinct groups for analysis.  In summary, this grouping approach for analysis purposes does not create, nor does it advocate for single-section markets.

Next, Anadarko argues the grouping of 1-mile section "markets" is circular and impermissible, in that it arrives at a definition of the relevant market by proximity to Anadarko minerals so that it covers only the practice complained of.  This argument is unpersuasive as it ignores the relevant market alleged by Plaintiffs and as noted above, which is the mineral leasing market in the area of eastern Laramie County where oil and/or

---

[3] Dr. Wickelgren followed the approach of the Department of Justice and Federal Trade Commission's Horizontal Merger Guidelines.  The Tenth Circuit concluded that this Court's "decision to credit Plaintiffs' definition of the relevant market and submarket groupings, based on the evidence presented, was not clearly erroneous and falls within the bounds of rationally available choices given the facts and law involved." *Black*, 69 F.4th at 1177-78.

gas is reasonably producible from the Niobrara and Codell geologic formations. The aggregation of land into the two identified product groups for analysis purposes does not change the definition of relevant market, nor does it render the approach taken by Dr. Wickelgren circular or impermissible as a matter of law.

The Court turns next to Anadarko's various arguments against Plaintiffs identified relevant market. Anadarko argues Plaintiffs have no preference on purchasers and thus have improperly limited the relevant market. This argument is unpersuasive as it disregards the *Telecor* discussion about monopsonistic price depression in a rare case presenting unusual circumstances, as alleged by Plaintiffs, which left mineral lessors/sellers in Plaintiffs' relevant market unable to find other buyers or switch to alternative uses. *See Telecor*, 305 F.3d at 1134–36. Further, Anadarko's argument that it was not a buyer (so it could not have been a monopsonist) again ignores the *Telecor* discussion of restraints on input markets where the price is depressed by monopsony restraints, leaving sellers unable to find alternative buyers. *Id.* at 1135–36 (internal citations omitted). *Telecor* recognizes that there is a dead-weight loss associated with imposition of monopsony restraints. *Id.* at 1136 (internal citation omitted). Additionally, the fact that Anadarko was not a "buyer" insofar as it did not force the mineral lessors to accept a monopsony price also ignores the unique allegations in this case – namely, Anadarko's plan to keep other operators off the Land Grant so that it could either develop the area based on a "mow the grass" approach or sell the undeveloped asset. According to Plaintiffs' allegations, either outcome benefitted Anadarko by way of an anticompetitive restraint, at Plaintiffs' expense.

14

Additionally, Anadarko argues Plaintiffs offer no evidence that Anadarko had actual market power, as a matter of law, in the real world, in any relevant geographic or product market.  Anadarko relies on its expert, Dr. Schulman, to argue that Anadarko did not have enough shares of reasonably producible acres in Laramie County to possess monopsony power. ECF 154-1; ECF 317-1; ECF 359-1. Plaintiffs rely on their experts (Wickelgren, Corbett and Finley) to argue the type of market power exercised by Anadarko, and to argue against Dr. Schulman's quarter-quarter section lease analysis.  According to Plaintiffs' experts Corbett and Finley, Dr. Schulman's analysis fails to correctly quantify on a net mineral basis the leased and unleased acreage during the class period.  Finley also opines how, as part of Anadarko's "secure operatorship" program, the 30% royalty deterred the filing of APDs (or increased density APDs) by other operators, thus having a pronounced negative impact on leasing. ECF 352-2.  The Court concludes, like relevant market disputes, the disputed evidence of market power must be presented to the jury, rendering summary judgment on this issue as a matter of law inappropriate.

Finally, Anadarko argues its conduct does not fit within the limited types of unilateral conduct that violate Section 2, referencing *Norvell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013), for the proposition that, as a general rule, purely unilateral conduct does not constitute monopoly misconduct, as businesses are free to choose whether or not to do business with others and free to assign what prices they hope to secure for their own products.  Anadarko argues the two types of conduct, predatory pricing and refusal to deal, constitute the only recognized anticompetitive conduct for Section 2 violations.  The Court is unpersuaded by Anadarko's understanding of *Norvell*.  The Tenth Circuit

recognizes that "every rule proves over-or under-inclusive in some way," and identifies notable, but <u>not all</u>, examples of potential anticompetitive conduct. *Id.* at 1074–75.

In short, this case does not concern "conduct that experience teaches almost never harm consumers." *Id.* at 1073. As *Telecor* indicates, in certain rare cases, including those which involve a resource that is uniquely valuable in its current use, such cases can illustrate antitrust conduct in the form of monopsony pricing restraints which cause sellers to become unable to find alternative buyers. 305 F.3d at 1135–36 (internal citations omitted). Therefore, as to Anadarko's argument that Plaintiffs fail to show an actionable Section 2 violation, Plaintiffs' allegations suffice to survive summary judgment, and a jury will need to determine whether this is the type of rare monopsony case for antitrust liability.

In summary, the Court concludes the parties' definitions of relevant geographic-product markets and submarkets, whether Anadarko had monopsony power within the relevant market(s), and whether Anadarko committed an actionable Section 2 violation should be submitted to the jury as they present questions of fact. *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1515 (10th Cir. 1984).

**III.** *Antitrust Injury*

Anadarko argues Plaintiffs fail to show their injuries were caused by the alleged anticompetitive conduct. In support of this argument, Anadarko relies on an analysis by its expert Dr. Schulman of actual leasing outcomes which shows: (1) during the Class Period, 18% of minerals (on an acreage basis) north or south of a 30% lease were in fact leased; and (2) since the end of the Class Period, only 2% of adjacent minerals were leased

even after the removal of the 30% royalty.[4]  Anadarko advances additional arguments, including that there is no evidence that Plaintiffs were offered below market terms to lease minerals, and that Anadarko imposed the high royalty rates for legitimate business reasons, not anticompetitive reasons.

As with the Court's conclusion relating to disputed evidence of market power discussed herein, Plaintiffs have offered sufficient evidence for the jury to consider regarding the negative impact Anadarko minerals with 30% royalty had on offsetting mineral owners during the class period, and the level of activity in terms of leasing outcomes before, during and after the class period. ECF 352-2.  Plaintiffs' expert Wickelgren also opines that Class members would have had a leasing opportunity, but Anadarko denied them that opportunity.  Finally, the reasons Anadarko imposed the 30% royalty rate are clearly disputed.  A jury will be required to decide whether the rate was imposed for legitimate business reasons, or for anticompetitive reasons.  In summary, the record to date, including expert submissions and common sense, are sufficient to create a genuine dispute of material facts for consideration by a jury, and this portion of Anadarko's argument for summary judgment is DENIED.

## IV.    *Attempted Monopsonization and State Law Claims*

For same the reasons argued above which Anadarko concludes defeat Plaintiffs' federal law claims, Anadarko argues Plaintiffs' attempted monopsonization and state law claims fail.  The Court has not accepted Anadarko's reasoning on Plaintiffs' federal claims,

---

[4] Dr. Schulman updates this analysis to conclude that his opinions remain unchanged. ECF 359-1.

consequently the Court also does not accept this same reasoning for judgment against Plaintiffs' attempted monopsonization and state law claims.

Anadarko also argues that Plaintiffs' allegations of attempted monopsonization also fail because there is no evidence that Anadarko had a dangerous probability of achieving monopsony status given that Anadarko did not lease any third-party minerals to result in a monopsony.  Anadarko also argues Plaintiffs cannot show that Anadarko possessed the specific intent to monopsonize as required for an attempt claim.

The Court has herein addressed and rejected Anadarko's argument surrounding the fact that they did not lease any third-party minerals and will not rehash that argument here. In short, as pointed out by Plaintiffs and discussed by the Court herein, Anadarko's argument misses the point as to Plaintiffs' theory of attempted and actual monopsonization. The record in the case up to this point, and more specifically, Plaintiffs' evidence and allegations relating to the "Secure Operatorship" scheme, provide some evidence of the specific intent argued by Plaintiffs.  Anadarko provides different evidence of intent in the form of explaining why Anadarko implemented the 30% intracompany royalty rate.  This competing evidence raises disputed questions of material fact for the jury to consider, making a grant of summary judgment against Plaintiffs' attempted monopsonization claim inappropriate.

Finally, as to Plaintiffs' claim under Wyo. Stat. § 40-4-101(a)(i), Anadarko argues this claim must fail because agreements between affiliated entities cannot be the subject of a conspiracy or unlawful agreement claim.  Plaintiffs respond that this state law covers a broader array of anticompetitive conduct than the Sherman Act, and there is no basis to

18

conclude that the Wyoming legislature made a purposeful choice to accord different treatment to unilateral and concerted conduct.  The relevant subpart of the state statute at issue provides:

> Any person, firm, corporation, foreign or domestic, or other entity doing business in the state of Wyoming shall not … [m]ake, enter into, form or become a party to any plan, contract, agreement, conspiracy, asset acquisition, consolidation, merger or combination of any kind whatsoever to prevent or substantially lessen competition, create a monopoly or to control or influence production or prices thereof….

Wyo. Stat. § 40-4-101(a)(i).

The unambiguous language of this state law clearly covers a much broader range of conduct compared to Anadarko's limited focus on a conspiracy or unlawful agreement. The state law sweeps within its ambit the mere action of making or forming an anticompetitive plan, among other conduct.  Plaintiffs allege and have consistently argued, among other things, that Anadarko made a plan through its Secure Operatorship scheme to prevent or substantially lessen competition in order to control or influence production or prices in the relevant market, all without a valid, good faith, pro-competitive business justification or purpose. *See, e.g.*, ECF 81, ¶ 92 *et seq.*  These allegations, along with the record developed to date, suffice to avoid summary judgment as to Plaintiffs' claims under Wyo. Stat. § 40-4-101(a)(i).

Therefore, for all the reasons stated above, this portion of Anadarko's motion for summary judgment as to Plaintiffs' attempted monopsonization and state law claims is DENIED.

## V.   *Damages*

Anadarko argues no Plaintiff has any evidence of damages, reasonably disaggregated, attributable to the alleged antitrust violation.  Anadarko argues Plaintiffs have previously designated Dr. Fitzgerald as a damages expert but did not re-designate him.  As to the disaggregation argument, Anadarko argues Plaintiffs have made no attempt to show they can disaggregate the impact of the lawful permits from the impact of the allegedly unlawful 30% leases.  Anadarko argues this deficiency is grounds for judgment as a matter of law.  Plaintiffs respond by arguing that Dr. Fitzgerald remains designated for the stage of the case when damages become relevant, and that Anadarko made its damages arguments before this Court and the Tenth Circuit, which fully approved the certification of an issues class on liability.

The Court agrees with Plaintiffs that Dr. Fitzgerald remains designated as a damages expert without need for redesignation at this stage of the case.  The Court also agrees that the Court previously rejected the argument that no Plaintiff has any evidence of damages, disaggregated or otherwise. The argument advanced by Anadarko relies on evidence disputed by Plaintiffs through their supplemental expert opinions, which must be resolved by the jury and not by this Court.  Therefore, this portion of Anadarko's argument for summary judgment is DENIED.

## VI.   *Occidental Petroleum Corporation*

Anadarko argues that Occidental Petroleum Corporation should be dismissed because Plaintiffs have no evidence showing that Anadarko is the alter ego of Occidental, and no evidence showing independent conduct on the part of Occidental.  According to

Anadarko, these are the tests to bring a Sherman Act Section 2 claim against a parent corporation based on anticompetitive activity occurring at the subsidiary level. *See Climax Molybdenum Co. v. Molychem, L.L.C.*, 414 F. Supp. 2d 1007, 1012 (D. Colo. 2005). Plaintiffs argue against dismissal, alleging Occidental had full knowledge of the Secure Operatorship Program before it purchased Anadarko, maintained the program with the same individuals who had devised it, and benefitted from the monopsony misconduct when it sold the monopsonized asset to Orion for more than a billion dollars. Considering these facts, Plaintiffs argue dismissal is not appropriate.

As to this portion of Anadarko's motion for summary judgment, the Court concludes that there are disputed questions of material fact concerning whether Occidental controlled, dictated, and encouraged the alleged anticompetitive conduct, rendering summary judgment inappropriate.

<u>CONCLUSION</u>

For the reasons discussed above, the Court discerns no difference between Anadarko's possession and its authorized use of the APDs, and therefore the Court concludes there is no adequate factual basis or legal argument supporting Plaintiffs' argument that Anadarko has no *Parker*/state action defense to the federal law claims concerning Anadarko's acquisition, possession and use of its APDs. Further, Plaintiffs' argument that this defense has no applicability as to the state law claims is inadequately supported. Therefore, Plaintiffs' motion for partial summary judgment (ECF 330) is **DENIED**.

Further, for the reasons discussed above, the Court finds no factual or legal basis to revisit its previous conclusion that Anadarko enjoys no immunity or state actor defense based on *Parker* and its prodigy as to the imposition of the 30% intracompany royalty. Additionally, there are disputed questions of material fact concerning the relevant market, Anadarko's conduct in the relevant market and whether it constituted prohibited anticompetitive conduct under federal or state law, and whether Occidental Petroleum Corporation should be dismissed. Finally, Plaintiffs' claims under Wyo. Stat. § 40-4-101(a)(i) do not fail as a matter of law. Therefore, Defendant's motion for summary judgment (ECF 333) is **DENIED**.

IT IS SO ORDERED.

Dated this  11th  day of March, 2024.

NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE