Robert P. Schuster (Bar No. 4-1137)
Bradley L. Booke (Bar No. 5-1676)
Robert P. Schuster P.C.
P.O. Box 13160
250 Veronica Lane, Suite 204
Jackson, WY 83002
Telephone: 307.732.7800
bob@bobschuster.com
brad@bobschuster.com
Attorneys for Plaintiffs

Samuel Issacharoff (*pro hac vice*)
40 Washington Square South
New York, New York 10012
Telephone: 212.998.6580
si13@nyu.edu
Attorney for Plaintiffs

Robert Klonoff
2425 S.W. 76th Avenue
Portland, Oregon 97225
Telephone: 503.702.0218
klonoff@usa.net

J.N. Murdock (Bar No. 5-1629)
Murdock Law Firm, LLC
1551 Three Crowns Drive, Suite 314
Casper, Wyoming 82604
Telephone: 307.333.5444
jnmurdock@murdocklawfirm.com
Attorney for Plaintiffs

Laurence O. Masson (*pro hac vice*)
Law Office of
Laurence O. Masson
2625 Alcatraz Avenue, # 206
Berkeley, California 94705-2702
Telephone: 510.735.9691
lomlex@gmail.com
Attorney for Plaintiffs

Thomas N. Long (Bar No. 5-1550)
Aaron J. Lyttle (Bar No. 7-4726)
Kaylee A. Harmon (Bar No. 7-6308)
Long Reimer Winegar LLP
P.O. Box 87
2120 Carey Ave., Suite 300
Cheyenne, WY 82003
Telephone: 307.635.0710
Fax: 307.635.0413
tlong@lrw-law.com
alyttle@lrw-law.com
kharmon@lrw-law.com
Attorneys for Plaintiffs

Cody L. Balzer (Bar No. 6-2931)
Balzer Law Firm, P.C.
1302 Cleveland Avenue
Loveland, CO 80537
Telephone: 970.203.1515
cody@balzerlaw.com
Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Anita C. Deselms, et al.,<br><br>     Class Representatives,<br><br>v.<br><br>Occidental Petroleum Corporation, et al.,<br><br>     Defendants. | Civil Action No. 19-CV-243-KHR |

## CLASS REPRESENTATIVES' BRIEF IN SUPPORT OF UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, CERTIFY THE CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF NOTICE, APPOINT SETTLEMENT CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL, APPOINT THE DEPOSIT ESCROW AGENT AND DISTRIBUTION ESCROW AGENT, AND SET DATE FOR FINAL FAIRNESS HEARING

   This Court previously certified a class to be "maintained as a class action for liability

purposes only" in its *Order Certifying Class Pursuant to Fed. R. Civ. P. 23(c)(4) (ECF 227).*  That certification order was affirmed by the United States Court of Appeals for the Tenth Circuit (ECF 275).  As a  part of that liability class certification, Anita C. Deselms, Ron Rabou, Russell I. Williams, Jr., John C. Eklund, Jr., Justin W. Miller, and Brandi J. Miller were appointed as Class Representatives.  The Court also approved the attorneys listed above the caption to this Brief to serve as Class Counsel.  Issues pertaining to damages were deferred--- to be addressed later in the litigation.

A three-week jury trial was set to commence on August 12, 2024.  But, on August 6, 2024, the Honorable William F. Downes (retired) conducted a mediation that, ultimately, resulted in the successful completion of the *Stipulation and Settlement Agreement* ("Settlement Agreement"). Exhibit 1. Class Representatives and Class Counsel believe the Settlement Agreement represents a recovery for the Settlement Class that is fair, reasonable, and adequate.  The Defendants are required to pay $12 million for settlement of the claims brought in this litigation. Having reached this settlement with Defendants, Class Representatives now move the Court to preliminarily approve it. Specifically, Class Representatives respectfully request  the Court:

(1) certify the Settlement Class for Settlement purposes;

(2) preliminarily approve the Settlement;

(3) appoint Class Representatives as Settlement Class Representatives for the Settlement Class;

(4) appoint Class Counsel and Settlement Class Counsel for the Settlement Class;

(5) approve the form and manner of the proposed Notice;

(6) appoint Signal Interactive Media, LLC ("Signal") as the Settlement Class Notice Manager;

(7) appoint Converse County Bank as Deposit Escrow Agent and Distribution Escrow

Agent; and

(8) set a hearing date for final approval of the Settlement and application for an award of Class Counsel's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and Case Contribution Awards to Class Representatives. A setting for May 15, 2025 at 2:00 p.m.is tentatively on the Court's calendar.

Class Representatives and Defendants have agreed to the form of the Preliminary Approval Order.  Exhibit 2.

## SUMMARY OF THE LITIGATION

Class Representatives, amongst others, initiated this action on November 25, 2019, (ECF 1) alleging that Defendants engaged in anticompetitive conduct in violation of  Section 2 of the Sherman Act (15 U.S.C. § 2), and Wyoming law, including Wyo. Stat. § 40-4-101.  The Complaint was amended twice at ECF 43 and ECF 87.  More specifically, the amended allegations asserted that Defendants executed and recorded 30% Intracompany Leases contiguous or adjacent to lands owned by the Putative Settlement Class Members. The 30% Intracompany Leases made oil and gas development uneconomic for other oil and gas leasing competitors. The Putative Settlement Class Members were, thereby, prevented from leasing their oil and gas mineral interests during the Class Period, denying them the bonus payments and development opportunities attending the leasing.  Class Representatives pursued their own claims for this alleged anticompetitive conduct in addition to pursuing the claims on a class-wide basis.

Defendants filed answers to the Complaint and amendments thereto as ECF 32, ECF 44 and ECF 87, essentially denying the claims, asserting affirmative defenses, and contesting whether any class could be certified.  During the pendency of the litigation, the Court heard and made numerous decisions on motions to dismiss, motions for summary judgment, motions in

limine, and  other motions.   The Court issued multiple Scheduling Orders.   Of particular

significance to the current motion, the Court certified a liability class on May 20, 2022. ECF 227.

Defendants requested permission to appeal the class certification June 7, 2023, which was granted

(ECF 236).   The United States Court of Appeals for the Tenth Circuit rendered its opinion affirming

this Court's class certification pursuant to Fed. R. Civ. P. 23(c)(4) (ECF 275-1 and ECF-275-2) and

issued its mandate on June 29, 2023, thereby returning jurisdiction  to this Court (ECF 275).

  During the nearly five years of litigation, the Parties exchanged more than three million

pages of documents (both in paper and electronic form),  conducted dozens of depositions, and

submitted numerous expert designations, inclusive of expert reports and supplements thereto.

The Parties also completed the tasks required in the  immediate pretrial period,   including

preparation of exhibits, witness lists, motions in limine, and jury instructions. The Final Pretrial

Conference was conducted on July 18, 2024.

  As the trial approached, mediation with Judge Downes was discussed. It was difficult

to find an agreeable date due to the  short notice and  the pendency of preset deadlines.

Ultimately, the mediation occurred on August 6, 2024.  Agreement was not achieved on that date

but Judge Downes, consistent with his reputation, was persistent.  He is nationally recognized for

his experience and skill in mediating large, complex civil cases.  He invited the submission of

mediation statements, documents, and expert witness materials and, in concentrated fashion,

engaged in many one-on-one conferences with counsel for both Parties.  It allowed the Parties

to fully assert and test their legal and factual arguments.   In respectful but determined fashion,

Judge Downes---in his role as an independent but highly skilled mediator---brought the Parties

to a tentative resolution, but one that still  required additional internal approvals. Both Parties-

--as well as Judge Downes---informed the Court that settlement was likely.  The Court delayed

the trial by one week (ECF 424).  A term sheet was finalized which was then expanded into the Settlement Agreement that has been  executed  and submitted to the Court.

It was a constructive process.  The significant role played by Judge Downes was formative, assuring that the negotiations were arms-length and in good faith.

## ARGUMENT & AUTHORITY

### A.    The Court Should Certify the Settlement Class for Settlement Purposes

In reviewing a proposed class-wide settlement, the court determines whether the action may be maintained as a class action settlement under Fed. R. Civ. P. 23(e). *See, e.g.*, *Ziegler v. Dale*, 2021 WL 8999336 at *3 (D. Wyo. 2021) ("Federal Rules of Civil Procedure require that proposed class action settlements be submitted for court approval.").  Rule 23(a) examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Further, Rule 23(b) examines whether common questions predominate in the dispute and whether the class action is superior to other methods.

District courts exercise considerable "discretion" in making class-certification decisions.  *Black v. Occidental Petroleum Corporation*, 69 F.4th 1161, 1174-1175 (10th Cir. 2023). The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citation omitted).  In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D).  *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).  Unique to this case is the fact that this Court and the Tenth Circuit Court of Appeals have determined, for liability purposes, that the

requirements of Rule 23 have been satisfied.[1]  Thus, the need for analysis is more limited and should focus on the damages' component of the class action settlement.

Here, Class Representatives have agreed to---and Defendants do not oppose—the following: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Class Representatives as Settlement Class Representative; and (3) the appointment of Class Counsel. *See* Settlement Agreement at ¶¶ 1.48, 48, (Exhibit 1) . Accordingly, Class Representatives move the Court to preliminarily certify a Settlement Class consisting of persons or entities who own Settlement Class Minerals.  The phrase "Settlement Class" is defined as follows (Exhibit 1 at ¶ 1.47):

> "**Settlement Class**" shall mean all persons, including individuals, estates, trusts, corporations, partnerships and other business entities having ownership of Settlement Class Minerals as shown by the public records of the Clerk and Recorder of Laramie County, Wyoming. Excluded from the Settlement Class is any owner who is: (1) a Defendant; (2) an officer, director, or employee of a Defendant, (2) an entity in which a Defendant has a controlling interest or is an affiliate, (3) any entity controlled by the buyer of Anadarko's leases or minerals, including Cowboy Land LLC, Sweetwater Trona HoldCo LLC, and any other affiliate of Orion Mine Finance Group, (4) anyone who has given a valid release concerning the Released Claims, (5) was a lessee of Class Minerals during the Class Period, or (6) an affiliate of the Court.

The phrase "Settlement Class Minerals" is defined as follows (Exhibit 1 at ¶ 1.51):

> "**Settlement Class Minerals**" mean oil and gas minerals located in the Niobrara and/or Codell geologic formations east of Range 67 West in Laramie County having oil and gas pools that could be reasonably produced as demonstrated by industry's filing of drilling and spacing applications or applications for drilling permits in at least 50% of the sections in the relevant township that were not under an oil and gas lease to drill and operate wells during the Class Period; <u>and</u> were located either:

---

1 *Opinion Granting in Part and Denying in Part Plaintiffs' Motion tio Certify Class*, ECF 220 at 15-28; *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1175-1186 (10th Cir. 2023).

  a.  Within a section that had a 30% Intracompany Lease covering at least 50% of the oil and gas minerals provided the lease or memorandum of the lease was filed in the Laramie County public records disclosing the royalty rate, or

  b.  In a section (or a part thereof) immediately bounded to the north, south, or both by a section in which Occidental had a 30% royalty Intracompany Lease as set forth in subparagraph a above.

The phrases "Class Period" and "Intracompany Lease" are defined as follows (Exhibit 1 at ¶¶ 1.4, 1.23) :

  "**Class Period**" means the period beginning and including November 1, 2017, and ending and including October 19, 2020.

  "**Intracompany Lease**" means a lease of oil and gas minerals located in the Niobrara and/or Codell geologic formations within Laramie County, Wyoming, that is filed with the Laramie County Clerk between any two affiliates of Anadarko Petroleum Corporation, including but not limited to such leases in which Anadarko Land is the lessor and either Anadarko Onshore or Anadarko Oil 5 is the lessee .

Certification of the Settlement Class  furthers the interests of Settlement Class Members and Defendants by allowing this case to be settled on a class-wide basis.  The proposed Settlement Class satisfies the requirements of Rule 23. This Court should certify the Settlement Class.

 **1.  Numerosity**

  Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Class has potentially over 2,000, but no less than 500, members residing in numerous states.  Corbett Declaration, Exhibit 3 at ¶ 13. The dispersed nature of owners throughout Wyoming and beyond makes joinder of all Class Members impracticable. *See, e.g.*, *Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1).").   Class Representatives have identified

potentially 2,000 or more possible Settlement Class Members.  Further, Defendants have agreed the Settlement Class should be certified for settlement purposes.  *See* Settlement Agreement.  It is submitted that the Class Representatives have satisfied numerosity for this settlement.[2]

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Of course, "'[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Plaintiff need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

This Court has certified and the Tenth Circuit Court of Appeals has affirmed this case as a class action under Rule 23, finding that common questions exist.  The only difference between the class certifications already approved and this settlement is the additur of dollars for the settlement.  However, this Court did examine and characterize the theory of damages advanced in the certification proceeding:  "Plaintiffs contend this anticompetitive conduct created a large area of negative impacts to every mineral owner in the area because these owners were excluded from the market . . .  through this expected common proof from Plaintiffs' experts, the antitrust impact

---

2 Numerosity is also addressed in Mr. Murdock's Declaration---Exhibit 4 at ¶ 4.a.

claimed by Plaintiffs is a reduction of the value for all mineral interests owned by the class." *Opinion Granting in Part and Denying in Part Plaintiffs' Motion to Certify Class* (ECF 220) at 20.

As set forth in the Finley Declaration (Exhibit 5), Settlement Class Representatives' expert and petroleum engineer Andrew Finley  opined that an expert determination cannot be made of either the profitability potential of individual Settlement Class Minerals *or* the profitability potential of one grouping of Settlement Class Minerals compared to the other Settlement Class Minerals---due in large part because no adequate exploration of those minerals has occurred to date.  Finley Declaration, Exhibit 5 at ¶¶ 4, 8.  Effectively, what this means is that it is not possible to differentiate the individual productivity of any given part of the Settlement Class Minerals or the consequential reduction in their value caused by the Defendants' alleged anticompetitive conduct.

This, in turn, means that the dollars to be paid as part of the settlement cannot be accurately allocated by hypothetical or potential productivity but instead should be treated as having equal potential for productivity and, therefore, calculated commonly.  *Id.*  The proposed allocation of monies received under the Settlement Agreement reflects that factual and legal proposition and requires that each Settlement Class Member receive the same distribution of the Settlement Agreement's settlement amount on a per net mineral acre basis for Settlement Class Minerals. Accordingly and as explained below in the definition of "Allocation Methodology", each Settlement Class Member (including Settlement Class Representatives) will receive the same amount per net mineral acre as everyone else:

> **Allocation Methodology**" means the *pro rata* distribution of the Settlement
> Distribution Fund on a per net mineral acre basis for the Settlement Class Minerals,

based on an individual Settlement Class Member's percentage ownership of the net mineral acreage owned by the entire Settlement Class yielding a "Payment Amount Per Net Mineral Acre." For example, if the total net mineral acres found in the Settlement Class Minerals were 1,000 net mineral acres and an individual Settlement Class Member owned 10 net mineral acres, that individual Settlement class member would be entitled to one percent (1%) (10/1,000) of the Settlement Distribution Fund. Likewise, if the Settlement Distribution Fund were $1,000, that Settlement Class Member would be entitled to one percent (1%) of the Settlement Distribution Fund or Ten Dollars ($10.00). The Payment Amount Per Net Mineral Acre would be equal to the amount of the Settlement Distribution Fund divided by the total net mineral acres found in the Settlement Class Minerals or $1,000/1,000 net mineral acres which equals one dollar per net mineral acre ($1/net mineral acre).

Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* Settlement Agreement. It is submitted that the Class Representatives have satisfied commonality for this settlement.[3]

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "Like commonality, typicality does not require that every member of the class share a fact situation identical to that of the named plaintiff." *Sherman v. Trinity Teen Solutions, Inc.*, 84 F.4th 1182, 1193 (10th Cir. 2023). Rather, "typicality requires only that the claims of the class representatives and class members are based on the same legal or remedial theory." *Id.*

Class Representatives' claims are typical of the Settlement Class's claims because they share the exact same claim: alleged antitrust violations in implementing 30% Intracompany Leases, causing Class Representatives and Putative Settlement Class Members to lose the opportunity to enter into oil and gas leases during the Class Period and, thus, (a) losing the opportunity to earn the bonus income paid for signing the oil and gas lease and (b) losing the

---

3 Commonality is also addressed in Mr. Murdock's Declaration---Exhibit 4 at ¶ 4.b.

opportunity for royalty income following development and production on the leases. Put differently, Class Representatives suffered the same injury as the Putative Settlement Class Members, and, thus, the remedies sought by Class Representatives are identical to those sought by the Putative Settlement Class Members. Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* Settlement Agreement.  It is submitted that the Class Representatives have satisfied the typicality requirement for this settlement.[4]

### 4.  Adequacy of Representation

Rule 23(a)(4) requires a showing that Class Representatives and Class Counsel "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor plaintiff's counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002).  No conflicts exist between Class Representatives and Class Counsel or as to any the Putative Settlement Class Members. To the contrary, Class Representatives share the same incentive as the Putative Settlement Class Members to vigorously prosecute this case and obtain recovery.

Class Representatives have done so, vigorously prosecuting this case through qualified counsel. Murdock Declaration, Exhibit 4 at ¶ 4.d. Class Counsel are highly experienced in class actions, particularly class actions related to oil and gas matters and further have members of the team that have a long history of antitrust experience.  Class Counsel have been appointed as lead or co-lead counsel in dozens of previous oil and gas class actions and were appointed

---

4 Typicality is also addressed in Mr. Murdock's Declaration---Exhibit 4 at ¶ 4.c.

so in this case.[5]  Moreover, Defendants have agreed the Settlement Class should be certified for

settlement purposes.  *See* Settlement Agreement.  It is submitted that the Class Representatives

have satisfied adequacy for this settlement.[6]

### 5.  Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members

---

5   Mr. Schuster, Mr. Balzer, and Mr. Murdock collectively have successfully litigated and settled more than 25 class action cases in Wyoming including cases in this Court.  One or more of Schuster, Balzer and Murdock have been involved in the following cases:  *Wold v. Hunt Oil Company*, 52 F.Supp.2d 1330 (1999); *Madsen, et al. v. Belco Energy Corp.*, Civil Action No. C-01-377 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. Cabot Oil & Gas Corporation*, Civil Action No. 10,550 in Wyoming District Court for Lincoln County, Wyoming; *Wagner, et al. v. Chevron U.S.A. Production Company*, Civil Action No. 79614 in Wyoming District Court for Natrona County, Wyoming; *Madsen, et al. v. CIGE Exploration, Inc.*, Civil Action No. C-00-365 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v Cross Timbers Operating Company.*, Civil Action No. 10,718 in Wyoming District Court for Lincoln County, Wyoming; *Scott, et al. v. Devon Energy Production Company, L.P.*, Civil Action No. C-01-384 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. EOG Resources, Inc.*, Civil Action No. 10,548 in Wyoming District Court for Lincoln County, Wyoming; *Madsen, et al. v. Marathon Oil Company.*, Civil Action No. 10,133 in Wyoming District Court for Lincoln County, Wyoming; *Scott, et al. v. Ocean Energy Resources, Inc.*, Civil Action No. C-01-379 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. Questar Exploration and Production Company.*, Civil Action No. 01-375 in Wyoming District Court for Sweetwater County, Wyoming; *Bishop, et al. v. Texaco Exploration and Production, Inc.*, Civil Action No. C-01-310 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. Tom Brown, Inc.*, Civil Action No. C-01-380 in Wyoming District Court for Sweetwater County, Wyoming; *Wagner, et al. v. Union Oil Company of California.*, Civil Action No. 01-381 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. Union Pacific Resources Company and RME Petroleum Company.*, Civil Action No. 10,549 in Wyoming District Court for Lincoln County, Wyoming; *Madsen, et al. v. Questar Gas Company.*, Civil Action No. C-01-376 in Wyoming District Court for Sweetwater County, Wyoming; *Scott, et al. v. Abraxas Petroleum Corporation*, Civil Action No. C-01-382 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. BP America Production Company*, Civil Action No. 10,105 in Wyoming District Court for Lincoln County, Wyoming; *Catterson, et al. v. McMurry Oil Company*, Civil Action No. 6143 in Wyoming District Court for Sublette County, Wyoming; *Scott, et al. v. HS Resources, Inc.*, Civil Action No. C-01-383 in Wyoming District Court for Sweetwater County, Wyoming; *Madsen, et al. v. North American Resources Company.*, Civil Action No. 01-378 in Wyoming District Court for Lincoln County, Wyoming; *Scott, et al. v. Samson Resources Company.*, Civil Action No. C-01-385 in Wyoming District Court for Sweetwater County, Wyoming; *Sandra K. Lange Trust, et al. v. Lance Oil & Gas Company.*, Civil Action No. 29635 in Wyoming District Court for Campbell County, Wyoming; *DEAK Limited Liability Company v. Burlington Resources Oil & Gas Company*, Civil Action No. 38387 in Wyoming District Court for Fremont County, Wyoming.  On or about September 4, 2012; *Sandra K. Lange Trust, et al. v. Anadarko E&P Onshore, LLC successor to Lance Oil & Gas Company*, Civil Action No. 32513 in Wyoming District Court for Campbell County, Wyoming; *Sandra K. Lange Trust, et al. v. WPX Energy Rocky Mountain, LLC, Civil Action 13-CV-74-J in the District Court for the State of Wyoming; and Austin Holdings, LLC v. Fidelity Exploration & Production Company, Civil Action 2013-143 in the District Court for Sheridan County, Wyoming.*  Mr. Issacharoff and Mr. Klonoff have collectively been involved in over one hundred class action cases including before the United States Supreme Court.  Examples  include *TransUnion, LLC v. Ramirez*, 594 U.S. 2190, 141 S.Ct. 2190, 210 L.Ed 2d 568 (2021); *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa 2015); *In re Deepwater Horizon* (5th Circuit); *In re Volkswagen Emissions* (9th Circuit); *In re National Prescription Opioids Litigation* (6th Circuit), *In re Samsung Top Load* (10th Circuit).
6 Adequacy is also addressed in Mr. Murdock's Declaration---Exhibit 4 at ¶¶ 4.d, 7.

predominate over any questions affecting only individual members." "To assess predominance, the district court must determine whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Sherman*, 84 F.4th at 1194. "Common, aggregation-enabling issues are those that are susceptible to generalized, class-wide proof or for which the same evidence will suffice for each member to make a *prima facie* showing; individual, aggregation-defeating issues are those for which members of the proposed class will need to present evidence that varies from member to member." *Id.* Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, at 453, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (citation omitted). Where, as here, the claims for Class Representatives and for the Putative Settlement Class Members stem from a "common nucleus of operative facts," common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

Again, Class Representatives allege and believe that Defendants systemically and uniformly implemented their 30% Intracompany Lease strategy in a manner that violated antitrust laws and led to common damages. This alleged common conduct gave rise to each Putative Settlement Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by aggregate representation. Because every Putative Settlement Class Member's claims arise from Defendants' alleged systematic and uniform conduct and the

distribution of the funds derived from the Settlement are uniformly equal based upon on a net mineral acre basis, common questions predominate over any individual issues. Further, Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* Settlement Agreement.   It is submitted that the Class Representatives have satisfied predominance for this settlement.

### 6.  Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).   In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). Further, "[i]n deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here. As an initial point, Class Counsel have no

knowledge of any other pending individual actions on the antitrust claims alleged in this case. Further, because this case has been litigated in this Court, concentrating the Litigation in this forum is desirable. There are no anticipated difficulties managing this case as a class action for settlement purposes only.  In fact, Class Counsel have successfully administered class-action settlements not only in this Court but throughout Wyoming for the last 10-20 years. Defendants have agreed the Settlement Class should be certified for settlement purposes. *See* Settlement Agreement. This is an obvious instance in which a class action is the superior method for achieving fair and efficient adjudication.  It is submitted the Class Representatives have satisfied superiority for this settlement.[7]

## B.   The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes.  *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e)(2) guides the Court to approve a class action settlement when Rule 23's requirements are met.  Fed. R. Civ. P. 23(c)(2) says the following:

> **(2) *Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > **(A)** the class representatives and class counsel have adequately represented the class;

---

[7] Superiority is also addressed in Mr. Murdock's Declaration---Exhibit 4 at ¶ 4.f.

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

    **(i)** the costs, risks, and delay of trial and appeal;

    **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

    **(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

As discussed in more detail below, each of the Rule 23(e)(2) requirements are satisfied.

### 1. Class Representatives and Class Counsel Have Adequately Represented the Class

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base."  Fed. R. Civ. P. 23 Advisory Committee Notes, 2018.  Class Counsel have engaged in significant litigation efforts over the course of nearly 5 years.  They have obtained, reviewed, and analyzed voluminous data, taken or defended dozens of depositions, handled dozens of dispositive and non-dispositive motions, and defended this Court's certification of a liability class in the Defendants' appeal to the Tenth Circuit.

Further, numerous experts for the various components necessary for proof under antitrust claims have been engaged resulting in numerous designations, expert reports, depositions, and supplementations.  Today, Class Counsel are working very closely with oil and gas landmen who are very skilled in determining mineral ownership.  This is being done to assure distribution of the settlement amounts is made in conformity with the orders of this Court.

Additionally, as discussed *supra*, Class Counsel have served as class counsel in dozens

of prior class action settlements involving oil and gas matters in Wyoming over a 10-20 year period and are familiar not only with the litigation of class actions but also the efficient and compliant distribution of proceeds from settlement of those cases. Moreover and for their part, Class Representatives have been actively involved in this litigation since filing—including, *inter alia*, gathering of documents, sitting for depositions, attending Court hearings, and attending mediation in addition to periodic discussions with Class Counsel related to the status and decisions necessary in this case. For all these reasons, both Class Representatives and Class Counsel have adequately represented the class.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Class Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data and records, and consulted with their experts. The Settlement is the product of arm's-length negotiations between the Parties when Class Representatives and Defendants possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases. Indeed, trial of this case was to start within days of the settlement being made. Defendants are represented by highly capable and skilled attorneys, who have significant experience in complex matters including oil and gas and class actions like this one. The level of experience possessed by each side's counsel helped the Parties to better evaluate this case and to be efficiently conversant in this complex case.

The Settlement was reached through mediation conducted by Judge Downes whose

skillset and background in complex matters are well known to this Court. "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). An experienced mediator's involvement "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsch Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. This case was negotiated at arm's length in satisfaction of this second factor under Fed. R. Civ. P. 23(e).[8]

### 3. The Relief Provided for the Class Is Adequate and Appropriate

The adequacy of this settlement---and of any settlement---is to be evaluated by many factors.[9]

#### (i)     *The Costs, Risks, and Delay of Trial and Appeal*

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated."

---

8 The arm's length character of this serttlement is also addressed in Mr. Murdock's Declaration. Exhibit 4, ¶ 8.
9 The appropriateness of the settlement is discussed generally in Mr. Murdock's Declaration. Exhibit 4 at ¶ 9.

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side recognizes serious questions of law and fact exist in this case.

Though the Parties were able to ultimately agree to a settlement amount, they still disagree on numerous factual and legal issues. Defendants deny any wrongdoing. *See* Settlement Agreement. Defendants have stated that they entered into the Settlement solely to eliminate the burden, expense, and distraction of further litigation and its expense. *Id.* While Settlement Class Representatives were optimistic for success in this case with a Wyoming jury, they recognized a number of significant obstacles to be overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact are still in dispute. This Court is uniquely situated to understand the remaining questions of law and fact given its significant and constructive engagement in the case in the days leading up to the Settlement. Indeed, the Court had not only held the Final Pretrial Conference but had also issued numerous decisions on various matters from in limine motions to dispositive, evidentiary and procedural motions. The Court was keenly aware of the challenges that both Parties would have at the upcoming trial.

The trial was to be limited to liability issues. It was likely that any jury decision would be appealed by the non-prevailing party. That appeal would likely encompass another year or more of time. Following the appeal and assuming a favorable jury verdict for Class Representatives, this case would have entered a second stage, for damages, a stage that presented unique problems for the Class Representatives and could have lasted for additional years.[10]

The Settlement achieved at the mediation renders the resolution of these questions unnecessary and provides a guaranteed recovery today in the face of uncertainty or possible

---

[10] This factor is discussed is discussed in Mr. Murdock's Declaration. Exhibit 4 at ¶ 9.

years more of litigation.  It is submitted that Fed. R. Civ. P. 23(e)(2)(C)(i) is satisfied.

> ### (ii)  *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims*

The proposed distribution method for this common-fund Settlement will be effective. Class Counsel has engaged Cameron Corbett, Jeremy Moyle, and other landmen who are well-experienced and highly respected in Wyoming.  They will review title for the Class Period to identify who owns the minerals, their last known address, how many net mineral acres the records demonstrate are owned by the Putative Settlement Class Member, and  determine whether there is any evidence the minerals were leased during the Class Period.  Upon the conclusion of that effort, the Parties shall work together collaboratively to then provide initial calculations for purposes of sending Notice.  As explained *supra,* the allocation of the settlement will be equal to all owners based upon the net mineral acre owned by such member.

As set forth in the Settlement Agreement, owners will be provided their full amount of settlement allocated assuming they provide an IRS form W-9 to the Deposit Escrow Agent.  If they refuse or fail to provide the tax information, they will still receive payment but subject to IRS rules on backup withholdings.   The amounts withheld for taxes will be paid to the IRS. Ultimately, Class Counsel expect there may be some owners who are not found. It may occur that there will be owners who may not exclude themselves but for some reason do not cash the Distribution Check they receive.  As set forth in the Settlement Agreement, after a period of time, those monies will be paid to the Non-Profit Recipient.  *See* Settlement Agreement.  The Notice Manager (with assistance from Class Counsel and the landmen hired by Class Counsel) will make reasonable efforts to: (a) verify the last-known address of Putative Settlement Class Members and (b) locate current addresses of any Putative Settlement Class Members.  *Id*.

Subject to the Court's approval, Class Counsel will proportionately allocate the

Settlement Distribution Fund to individual Class Members who are participating in the Settlement based on the net mineral acres owned . *See* Settlement Agreement.  The Settlement Distribution Fund will be distributed as soon as reasonably possible after final approval has been obtained for the Settlement and any appeals are exhausted.  The Settlement Agreement specifies deadlines for distributing the Settlement Distribution Fund. *See* Settlement Agreement.

Importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement does not require Class Members to submit claim forms in order to receive their share of the Settlement Distribution Fund.  On the contrary, all Settlement Class Members who do not affirmatively opt-out of the Settlement will receive a Distribution Check without the burden of submitting a claim form---though the amount they receive will be adjusted to the extent a Settlement Class Member fails or refuses to provide an IRS form W-9.  *See* Settlement Agreement.  Based upon the foregoing, it is submitted that Fed. R. Civ. P. 23(e)(2)(C)(ii) is satisfied.

### (iii)     *The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Class Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* Doc. 31-1, Settlement Agreement at 29. Plaintiffs' Counsel anticipate they will seek a fee award of no more than forty percent of the cash amount paid for the Gross Settlement Fund as occurred in other cases before this Court.  *See Wake Energy, LLC*, No. 20-CV-183-ABJ, Doc. 84 at 2–9 (D. Wyo. Oct. 17, 2022) and *Wright v. Devon Energy Production Company, L.P.*, Case No. 22-CV-213-KHR, Doc. 44 at 2 (D. Wyo. August 9, 2024)).  Class Counsel have obtained an excellent recovery for the Putative Settlement Class Members in the

form of a $12 million cash payment.  Under the Settlement Agreement, the attorneys' fees the Court awards to Class Counsel shall be paid to Settlement Class Counsel from the Gross Settlement Fund, to the extent practicable through reasonably diligent efforts by the Deposit Escrow Agent, seven business day following the date the Judgment becomes Final and Non-Appealable.  *See* Settlement Agreement.  This is a similar amount and timing as this Court has previously approved in other class actions settlements.  It is submitted that  Fed. R. Civ. P. 23(e)(2)(C)(iii) is satisfied.

### (iv)    Any Agreement Required to be Identified under Rule 23(e)(3)

The Parties have entered into the Settlement Agreement, which is submitted in full to the Court and will be available to all Putative Settlement Class Members to review in full. For the reasons stated earlier, the terms of the Settlement Agreement are fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2)(C)(iv) is satisfied.

### 4.   The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats all Putative Settlement Class Members equitably and equally relative to each other. All Settlement Class Members identified and who do not opt-out will receive their proportionate share of the Settlement Distribution Fund based on the amount of net mineral acres they own , allocated equally on a per net mineral acre as discussed  herein.  Class Representatives will receive their share of the recovery exactly the same with the only exception being that Class Representatives will separately seek a Case Contribution Award (to reimburse them in recognition of their time and effort in pursuing this case.

Because all four factors of Fed. R. Civ. P. 23(e)(2) weigh in favor of the Settlement here, Class Counsel respectfully request the Court grant preliminary approval of the Settlement.

**C.    The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class**

Fed. R. Civ. P. 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Class Representatives and Class Counsel have submitted to the Court for approval the Notice of Settlement and additionally a supplemental notice that will apprise owners of the least likely amount they are to receive along with notice of publication on the settlement website and a summary notice that will be published in various newspapers.  The documents that will be used to provide Notice of Settlement are attached as Exhibit 3-5 to the Settlement Agreement.  As set forth in the Settlement Agreement, Class Representatives and Defendants have agreed that, no later than 210 days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, Class Notices will be mailed to Putative Settlement Class Members along with the Supplementary Notice (Settlement Agreement) via first-class mail to the last known mailing address of each Class Member who can be reasonably identified. The Notice and Settlement Agreement  will also be posted on an Internet website dedicated to the Settlement.  Class Representatives and Defendants further agreed that the summary notice in Exhibit 5 to the Settlement Agreement shall be published one time in each of the following

newspapers: (a) the *Wyoming-Tribune Eagle*, a paper of general circulation in Wyoming; and (b) the *Pine Bluffs Post*.  In addition to publishing the Notice on the website, the website shall also include:  (a) the Second Amended Complaint, (b) the Settlement Agreement, (c) the Preliminary Approval Order, and (d) other publicly filed documents related to approval of the Settlement.  The Notices also direct Putative Settlement Class Members to this website for additional information.  And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will  inform Putative Settlement Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meet the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner by which they will be delivered and communicated to the Settlement Class.

**D.    Appointment of Signal Interactive Media, LLC as Settlement Class Notice Manager Is Proper**

To accomplish the administrative tasks required by the Court-approved plan of allocation and distribution,   Class Counsel respectfully request the Court appoint Signal Interactive Media, LLC ("Signal") to implement the Notice Program as the Settlement Class Notice Manager.[11]   Signal assisted Class Counsel in the notices sent out in this case for purposes of the liability class already certified herein. As it did previously, Signal will use mailed notices, radio spots, newspaper notices, heir tracking, and social media to contact Putative Settlement Class Members. Signal has handled many complex class action matters. Further, under the terms of the Settlement Agreement, Class Representatives and Class Counsel will work directly with the Settlement  Class Notice Manager for much of the notice, administration, and distribution processes. Accordingly, Class Counsel respectfully request the Court appoint Signal as the Settlement Class Notice Manager.

**E.    Appointment of Converse County Bank as Deposit Escrow Agent and Distribution Escrow Agent Is Proper**

Additionally, Class Counsel respectfully request the Court appoint Converse County Bank, Douglas, Wyoming, as the Deposit Escrow Agent and the Distribution Escrow Agent. Pursuant to the terms of the Settlement Agreement, the Parties mutually agreed upon Converse County Bank to carry out the duties assigned to the Deposit Escrow Agent and the Distribution Escrow Agent.  See Settlement Agreement.

**F.    The Court Should Set a Final Approval Hearing Date**

Finally, Class Counsel respectfully request  the Court set a hearing date to consider (1)

---

[11] The Declaration of Kristen Davis, Vice President of Signal Interactive Media, LLC, is attached at Exhibit 6.  It describes Signal's experience generally as well as its prior involvement with this case---and explains the proposed Notice Plan.

final approval of the proposed class action settlement and (2) approval of Class Representative and Class Counsel's forthcoming Motion for Plaintiff's Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and a Case Contribution Award.  Class Counsel contacted the Court for the earliest possible date for such a hearing. A Final Fairness Hearing set for May 15, 2025 at 2:00 pm has tentatively been put on the Court's calendar. That proposed date will provide sufficient time to comply with  the  timelines established by the Settlement Agreement and as required by applicable federal law, including the right to opt-out or otherwise object.

## CONCLUSION

For these reasons, Class Representatives respectfully request that the Court enter the agreed proposed Preliminary Approval Order found at Exhibit 1 to the Settlement Agreement which will:

(1)  certify the Settlement Class for Settlement purposes;

(2)  preliminarily approve the Settlement;

(3)  appoint Class Representatives as Settlement Class Representative for the Settlement Class;

(4)  appoint Class Counsel as Settlement Class Counsel;

(5)  approve the form and manner of the proposed Notice;

(6)  appoint Signal as Settlement Class Notice Manager;

(7)  appoint Converse County Bank as Deposit Escrow Agent and Distribution Escrow Agent; and

(8)  set a hearing date for final approval of the Settlement and application for an award of Class Counsel Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and Case Contribution Awards to Class Representatives.

As stated in the accompanying Motion, Class Counsel will submit a Word version of the agreed proposed Preliminary Approval Order, consistent with Local Rules.

Respectfully Submitted,

/s/ Kaylee A. Harmon

Kaylee A. Harmon
Long Reimer Winegar LLP

J.N. Murdock,
Murdock Law Firm, LLC

**COUNSEL FOR CLASS
REPRESENTATIVES**

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing pleading through the Court's electronic service system

this 4th day of October, 2024.

Barrett H. Reasoner
Ross M. MacDonald
Kathy D. Patrick
Mark Doré
Michael Davis
Gibbs Bruns, LLP
1100 Louisiana Street, #5300
Houston, Texas 77002
breasoner@gibbsbruns.com
rmacdonald@gibbsbruns.com
kpatrick@gibbsbruns.com
mdore@gibbsbruns.com
mdavis@gibbsbruns.com
*Attorneys for Defendants*

Darin Scheer
Timothy M. Stubson
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, Wyoming 82601
dscheer@crowleyfleck.com
tstubson@crowleyfleck.com
*Attorney for Defendants*

/s/ Kaylee A. Harmon
Long Reimer Winegar LLP